IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| W. BRAND BOBOSKY, and <br> WE NOT ME, LTD. <br>   Plaintiffs, <br><br> v. <br><br> ADIDAS AG d/b/a THE ADIDAS <br> GROUP, ADIDAS AMERICA, <br> INC., NBA PROPERTIES, INC. <br> NBA STORE, INC., NBA STORE, <br> LLC, NBA SERVICES, INC., <br> BOSTON CELTICS, L.P. and <br> KEVIN GARNETT, <br><br>   Defendants. | § § § § § § § § § § § § § § § § § <br><br> CIVIL ACTION NO. <br> _____ <br><br> (DEMAND FOR JURY TRIAL) |

## PLAINTIFFS' ORIGINAL COMPLAINT AND JURY DEMAND

Plaintiffs W. Brand Bobosky and We Not Me, Ltd. (hereinafter, "Plaintiffs" or "Bobosky") file their Original Complaint against Defendant adidas AG d/b/a The adidas Group, Defendant adidas America, Inc., Defendant NBA Properties, Inc., Defendant NBA Store, Inc., Defendant NBA Store, LLC, Defendant NBA Services, Inc., Defendant Boston Celtics, L.P. and Defendant Kevin Garnett and state the following:

### I.
### NATURE OF THE CASE

This is an action for federal trademark infringement, federal copyright infringement, common law unfair competition and unjust enrichment, all arising from Defendants' unauthorized use of Plaintiffs' "WE NOT ME" trademark and copyright in

---
PLAINTIFFS' ORIGINAL COMPLAINT – PAGE 1

connection with adidas' and the Boston Celtics' marketing campaign and also in connection with apparel distributed and/or sold by adidas and the NBA Store.

Plaintiffs are the owners of the following valid, subsisting, existing, and exclusively held trademark and copyright:

- United States Trademark Registration No. 3,118,117 (issued July 18, 2006); Mark: WE NOT ME[1] (Exhibit No. 1); and

- Copyright Registration No. TX 6-232-073 (issued September 7, 2005); Title of Work: WE NOT ME (Exhibit No. 2).

The Trademark Registration Certificate for the "WE NOT ME" mark is prima facie evidence of the validity of the registration, Plaintiffs' ownership of the "WE NOT ME" mark and Plaintiffs' exclusive right to use the "WE NOT ME" mark in connection with the sale of their products pursuant to 15 U.S.C. §1115(a), while providing constructive notice of Plaintiffs' claim of ownership of the "WE NOT ME" mark pursuant to 15 U.S.C. § 1072.

In summary, adidas, the NBA store, the Boston Celtics and Kevin Garnett knowingly stole one man's idea, which was rightfully protected, and have successfully conveyed to the public through global advertising that it is collectively their idea, not Bobosky's, who now appears to be the copy cat interloper. Bobosky's lawsuit represents the modern day story of David versus Goliath to protect the fruits of one's labors and one's property. Defendants, collectively through their well-established trade

---

[1] Bobosky also has pending United States Trademark Application, Application Serial No. 77/426430, filed on March 19, 2008 with the mark: WE NOT ME. *See* Exhibit 3.

PLAINTIFFS' ORIGINAL COMPLAINT – PAGE 2

names and by virtue of their economic power, extensively advertised Bobosky's "WE NOT ME" trademark and copyright. This joint effort ruined what Bobosky attempted to do for years (while investing inestimable amounts of time, resources and money) – offer licensing and use of his "WE NOT ME" trademark and copyright to make it globally known. In essence, the basis of this lawsuit is a multi-level hijacking of one man's exclusive rights to his own property.

## II.
## PARTIES

1. **PLAINTIFFS.** Plaintiff W. Brand Bobosky is an individual currently residing in Naperville, DuPage County, Illinois. Plaintiff is the valid owner of all title, rights and interest to each and every asset of We Not Me, Ltd., including but not limited to the "WE NOT ME" federally registered trademark and copyright.

2. Plaintiff We Not Me, Ltd. is a corporation in good standing existing under the laws of the State of Illinois. Plaintiff is engaged in the business of selling and distributing apparel conspicuously bearing the "WE NOT ME" mark throughout the United States, including the State of Texas and this District.

3. **ADIDAS.** Upon information and belief, Defendant adidas AG d/b/a The adidas Group is a joint stock company organized and existing under the laws of the Federal Republic of Germany. Defendant adidas AG's corporate headquarters and principal place of business are located at Postfach 1120, D-91072, Herzogenaurach, Federal Republic of Germany.

4.      Service of process is proper upon Defendant adidas AG through the means authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents, opened for signature Nov. 15, 1965, 20 U.S.T. 361, UNTS 163 ("Hague Convention").  In accordance with Articles 3 and 5 of the Hague Convention, Defendant adidas AG can be served by forwarding a properly formatted request, summons and complaint to the Central Authority of the For State of Bayern of the Federal Republic of Germany, whose address is Das Bayerisches Staasministerium der Justiz, Justizpalast, Prielmayerstrasse 7, 80335 Munchen.  Pursuant to Article 5(a) of the Hague Convention, Defendant adidas AG can be served by the Central Authority for the State of Bayern in the method prescribed by the internal laws of the Federal Republic of Germany for the service of documents in domestic actions upon persons who are within its territory.

5.      Upon information and belief, Defendant adidas America, Inc. is a corporation organized and existing under the laws of the State of Delaware.  Defendant adidas America, Inc.'s corporate headquarters and principal place of business are located at 5055 N. Greely Avenue, Portland, Oregon 97217.

6.      Upon information and belief, Defendant adidas America, Inc. is wholly owned by adidas North America, Inc., which is a non-public Delaware corporation.  adidas North America, Inc. is wholly owned by Defendant adidas AG.  Defendant adidas AG has no parent corporation.  Plaintiffs will refer to Defendant adidas AG d/b/a The adidas Group and Defendant adidas America, Inc. collectively as "adidas".

7. **NBA.** Upon information and belief, Defendant NBA Properties, Inc. is a corporation duly organized and existing under the laws of the State of New York with its corporate headquarters and principal place of business at 645 5th Avenue, New York, New York 10022.

8. Upon information and belief, Defendant NBA Store, Inc. is a corporation duly organized and existing under the laws of the State of New York with its corporate headquarters and principal place of business at 645 5th Avenue, New York, New York 10022.

9. Upon information and belief, Defendant NBA Store, LLC, is a limited liability corporation organized and existing under the laws of the State of New York with its corporate headquarters and principal place of business at 645 5th Avenue, New York, New York 10022.

10. Upon information and belief, Defendant NBA Services, Inc. is a corporation duly organized and existing under the laws of the State of New York with its corporate headquarters and principal place of business at 100 Plaza Drive, Secaucus, New Jersey, 07094-3766. Service of process may be made upon its registered agent, United Corporate Services, Inc., 815 Brazos Street, Suite 500, Austin, Texas 78701-2509.

11. Upon information and belief, Defendant NPA Properties, Inc. is the parent corporation for Defendant NBA Store, Inc., Defendant NBA Store, LLC, and Defendant NBS Services, Inc. Defendant NBA Properties, Inc. does not have publicly help corporate parents or subsidiaries. However, the shareholders of Defendant NBA Properties, Inc. are the member teams of the National Basketball Association.

Hereinafter in the Complaint, Plaintiffs will refer to Defendant NBA Properties, Inc., Defendant NBA Store, Inc., Defendant NBA Store, LLC, and Defendant NBS Services, Inc. as "the NBA".

12.     **BOSTON CELTICS.**  Upon information and belief, Defendant Boston Celtics, L.P. is a corporation duly organized and existing under the laws of the State of Massachusetts with its corporate headquarters and principal place of business at 151 Merrimac Street, Boston, Massachusetts 02114.

13.     **GARNETT**.  Upon Information and belief, Defendant Kevin Garnett is an individual and is a resident of the state of Massachusetts.  Defendant Kevin Garnett may be served with process at his residence in Concord, Massachusetts.

14.     In accordance with Federal Rule of Civil Procedure 4(d), Plaintiffs hereby notify the above-mentioned Defendants that they hereby request waiver of service of process.

### III.
### JURISDICTION AND VENUE

15.     **SUBJECT MATTER JURISDICTION.**  The United States District Court for the Eastern District of Texas has subject matter jurisdiction over this action pursuant to the provisions of 28 U.S.C. §§ 1331 and 1338 in that this matter is a civil action arising under the Constitution, laws, or treaties of the United States.  This Court also has subject matter jurisdiction in accordance with Section 39 of the Lanham Act, 15 U.S.C. § 112.  This Court also has jurisdiction pursuant to 28 U.S.C. § 1332 in that this matter is

a civil action between citizens of different states wherein the amount in controversy is believed to exceed the sum of $75,000, exclusive of interest and costs.

16. **PERSONAL JURISDICTION.** This Court has personal jurisdiction over adidas, the NBA, and the Boston Celtics because upon information and belief, adidas, the NBA and the Boston Celtics: (i) solicit, transact and conduct business in the state of Texas and in this District and are doing business or soliciting business or engaging in a course of conduct in this State and in this District; (ii) receive revenue from the State of Texas; and (iii) expect or reasonably should expect their conduct to have consequences in the State of Texas. This Court has personal jurisdiction over Defendant Garnett in that he has systematic and continuous contacts within the State of Texas.

17. **VENUE.** Venue is proper in this District in accordance with 28 U.S.C. § 1391 because upon information and belief the infringement of Plaintiffs' copyrights and trademarks and the infringing conduct occurred in the State of Texas and within this District.

### IV.
### FACTUAL BACKGROUND

A. **BOBOSKY TRADEMARKS, COPYRIGHTS AND PROTECTS HIS "WE NOT ME" MARK WHILE PROMOTING AND CAMPAIGNING IT FOR THE PAST TEN YEARS.**

18. W. Brand Bobosky is an attorney who has practiced law for over forty years. Bobosky has earned the nickname and has been known as "the idea man" in his town of Naperville, Illinois over the last two decades because many of his ideas have left a mark on his community. Specifically, Bobosky has spearheaded many initiatives. Thirty-some years ago, he conceptualized "the Little Friends Inc., Auction" which

annually raises over $100,000 to support a variety of programs for individuals with disabilities. As past president of the local Chamber of Commerce, and Rotary Club, he spearheaded the annual holiday lighting displays on the buildings in downtown Naperville. Bobosky also launched the "Century Walk," a public not-for-profit art exhibit located in and around downtown Naperville that presently includes thirty-three public art works.

19. In late 1999, Bobosky dreamed up the "WE NOT ME" message when serving as President-Elect of his local Rotary Club. Bobosky knew he had a wonderful message to convey with "WE NOT ME," however, he knew he had to start small and think big in terms of marketing this message. As demonstrated in more detail below, Bobosky has expended considerable time, money and effort in the marketing and promotion of his "WE NOT ME" trademark and copyright.

20. In the spring of 2000, Bobosky placed an order for 200 two-inch diameter symbol pins depicting the "WE NOT ME" symbol for distribution at his Rotary induction as President in June, 2000. In June of 2001, Bobosky ordered 125 two-sided key chains with the "WE NOT ME" symbol message. In 2002, Bobosky stepped up his marketing and distributed the second edition key chain.

21. In 2004, Bobosky took further actions to establish himself publicly as the creator and owner of the "WE NOT ME" concept despite financial restraints. For example, in February of 2004, he began advertising "WE NOT ME" in the monthly "Positively Naperville" newspaper, with a circulation that reaches over forty-thousand readers.

22. Not only did Bobosky work on additional promotion and advertising at this time, but he began to seek government protection. In March of 2004, he retained Welsh & Katz, Ltd., a Chicago intellectual property law firm to obtain copyright and trademark protection of the "WE NOT ME" phrase and symbol. Welsh & Katz, Ltd. proceeded to file Bobosky's federal and Illinois trademark applications for his "WE NOT ME" message. In October of 2004, the "WE NOT ME" mark and symbol were placed on 10,000 souvenir cups at Naperville's Oktoberfest.

23. On November 8, 2004, Bobosky incorporated in the State of Illinois We Not Me, Ltd. It was and is a business venture purposely established to further protect the mark and continues to remain good standing today.

24. In November of 2004, Bobosky worked with Netsource Communications, a local internet company, and obtained a domain name through Stargate Holdings Corporation to create the following website: www.WeNotMe.us. In June of 2005, Bobosky completed the web site. After the web site was established, Bobosky initiated a third model key chain as well as one-hundred and forty-four baseball caps. The "WE NOT ME" mark was written on the back of each cap. The web site has always represented that the mark "WE NOT ME" was available for licensing and use as it listed a contact that would filter through to Bobosky as the source for such licensing and use inquiries and inquiries were in fact made.[2]

---

[2] For example, on November 30, 2007, Susan Weber, a Human Resource Manager in the state of Michigan asked permission from Bobosky to use the "WE NOT ME" mark for her non-profit group, Network 180. Bobosky allowed the permitted use and when asked where she discovered Bobosky's mark, she represented that after seeing Kevin Garnett in an Adidas television commercial featuring the "WE NOT

25. On January 6, 2005, Bobosky's trademark of "WE NOT ME" was registered with the Trademark Section of the Office of the Secretary of State of Illinois.

26. On September 7, 2005, Bobosky's copyright of "WE NOT ME" was registered with the United States Copyright office. *See* Exhibit No. 2.

27. In October of 2005, both the mark and symbol were placed on over ten-thousand souvenir cups at the Naperville Oktoberfest. Similarly, the cups were also purchased and distributed at the Oktoberfest in October of 2007.

28. In 2006, Bobosky obtained a second set of baseball caps as well as lapel pins, money clips, golf ball markers and bow ties for distribution of the ideology, "We Not Me."

29. It was during this time Bobosky offered for sale the hats, key chains and money clips at the "Positively Naperville" store located at 50 W. Chicago Ave, Naperville, Illinois 60540.

30. On July 18, 2006, Bobosky's federal trademark "WE NOT ME" was registered. *See* Exhibit No. 1.

31. With his federally protected trademark in place, Bobosky spread the potential use of his mark, "WE NOT ME". Specifically, through a letter writing campaign during the summer of 2006, Bobosky contacted non-profit organizations, businesses and celebrities, including but not limited to Wal-Mart, Oprah Winfrey,

---

ME" phrase she went onto Google and typed in, "WE NOT ME" and Bobosky's web site address popped up in the search engine.

Regis Philbin and The Gates Foundation, regarding the licensing and use of his "WE NOT ME" mark.

32. In late 2006, Bobosky began working with Chicago-based songwriters Don and Sheila Jacklich to commission a song regarding the mark's message entitled, "We Not Me."

33. On March 19, 2008, Plaintiffs filed the United States Trademark Application, Application Serial No. 77/426430 for mark "WE NOT ME" on hats clothing and footwear. A Notice of Allowance was issued on May 12, 2009, and a Statement of Use and/or Extension was filed on November 12, 2009.

B. **ADIDAS AND ITS WILLFUL MARKETING CAMPAIGN THAT VIOLATES BOBOSKY'S "WE NOT ME" MARK.**

34. Defendant adidas AG is a German sports apparel manufacturer and is doing business as The adidas Group. Along with Defendant adidas AG, The adidas Group consists of the Reebok sportswear company, the TaylorMade golf company, and the Rockport shoe company. Besides sportswear, the company also produces other products such as bags, shirts, watches, eyewear and other sports and clothing related goods. It is the largest sportswear manufacturer in Europe and a close second to the largest sportswear manufacturer in the world, Nike.

35. Defendant adidas AG's revenue for 2008 was listed at €10.799 billion and the 2007 figure was listed at €10.299 billion, or approximately $15.6 billion U.S. dollars.

36. Within the State of Texas, adidas has eight retail locations, with one retail location in the Eastern District. Within the Eastern District, adidas sells and distributes

it apparel (including but not limited to t-shirts) from over fifty retail locations. Within this district alone, adidas apparel (including but not limited to t-shirts) may be bought at East Texas Sports Center, Sideline, TK Sports and JC Penny, all located in the Marshall Division.

37. On April 11, 2006, Defendant adidas AG announced that The adidas Group and the NBA signed an eleven year, $400 million global merchandising partnership with the purpose of making the adidas brand the official uniform and apparel provider for the NBA, the Women's National Basketball Association and the NBA Development League (D-League) beginning with the 2006-07 NBA season. The eleven year deal made adidas the official NBA apparel provider. adidas made NBA, NBDL, and WNBA jerseys and products.

38. **"IT TAKES 5IVE" CAMPAIGN.** On October 12, 2006, adidas announced the launch of a "global basketball movement" featuring NBA All-Stars Defendant Garnett, Tracy McGrady, Tim Duncan, Chauncey Billups and Gilbert Arenas. In or about December of 2006, adidas unleashed a new commercial featuring Defendant Garnett, Gilbert Arenas, Tracy McGrady, Tim Duncan, and Chauncey Billups, entitled "Do you believe in 5ive?"

39. The "It Takes 5IVE" campaign featured situations highlighting the players as individuals, but in the end the players tell the viewers they have been fooled if they believe it is any one individual when "It Takes 5IVE" players working together to do great things. On October 16, 2006, the campaign debuted globally on television and on www.adidasbasketball.com.

40. Eric Liedtke, Vice President of Global Brand Marketing for adidas, represented that adidas "wanted to tap into the idea that there is more to the game then just individual achievement and focus on the value of being part of a team." He further represented: "By bringing together five of the game's most successful athletes and having them deliver the message that real success can only come from being part of a team, and that any individual achievements cannot measure to the success that five players on the court can achieve together shows that teamwork is the most essential aspect to a team sport."

41. For the next six months, thirty and fifteen second spots for each of the five athletes as individuals aired following the brand spot on television. The campaign was carried over and further disseminated to the internet world at www.adidasbasketball.com.

42. adidas' successful global basketball movement, "Believe in 5IVE," led to their next campaign –- which violated Bobosky's copyright and trademark rights by promoting, marketing, branding and selling "WE NOT ME".

43. ADIDAS "BASKETBALL IS A BROTHERHOOD/WE NOT ME" CAMPAIGN. Building on its' "Believe in 5ive" successful campaign, adidas launched the "Basketball is a Brotherhood" campaign for the 2008 NBA season. The "Brotherhood" campaign extends the ideals first embedded in the team oriented "Believe in 5ive" campaign by "erasing the individual lines created by on the court egos." The "Brotherhood" campaign centered on the interaction between adidas' marquee professional athletes and tomorrow's budding stars.

44. On October 26, 20007, NBA All-Stars Defendant Garnett, Gilbert Arenas, Chauncey Billups, Tim Duncan, Dwight Howard and Tracy McGrady announced the continuing evolution of this philosophy with "Basketball is a Brotherhood." adidas launched a campaign timed with the kickoff of the NBA season while supporting adidas' Team Signature footwear and apparel.

45. The integrated commercial campaign push features the players during candid moments, working as a team, teaching kids how to behave as a team, and talking about the subject, interview-style. The focus of the campaign, however, is online with eleven video episodes housed at www.adidasbasketball.com. The campaign drives consumers to the site with TV, mobile, print and retail components. The media rollout covered the United States, Asian and European markets.

46. The adidas press release dated October 1, 2007, and reiterated April 2, 2008 (also highlighted in the company's annual report) expressed the slogan of "WE NOT ME":

> "The sole objective is to win through honoring the core values of the game: we lead by example, we trust each other; we make the extra pass; we fight for our fellow brother every night; we don't check box scores. And the only name of the jersey we care about is the one across the front. In the 'Brotherhood,' dynasties don't happen alone. In the 'Brotherhood,' **it's "'We Not Me.'"** (emphasis added)

47. The press release was the beginning of the world wide public infringement of Bobosky's "WE NOT ME" trademark and copyright.

48. By running "WE NOT ME" television commercials in October of 2007, adidas began a full frontal assault on Bobosky's copyright and marks. To promote the